1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CHERYL PEACH, personal representative of the
estate of David Peach, deceased,

Plaintiff,

v.

TIMOTHY A. SHOPSHIRE and CAN RIDGE
INDUSTRIES LTD,

Defendants.

CASE NO. CV05-0369C

ORDER

This matter comes before the Court on Defendants' motions to dismiss for lack of personal

jurisdiction (Dkt. No. 22) ("Defs.' PJ Mot.") and *forum non conveniens* (Dkt. No. 21) ("Defs.' FNC

Mot."), Plaintiff's Consolidated Response to Defendants' motions to dismiss (Dkt. No. 31) ("Pl.'s

Consol. Resp."), the Washington Attorney General Department of Labor and Industries' ("Department")

Response to Defendants' motions to dismiss (Dkt. No. 30), Defendants' Reply to the Department (Dkt.

No. 39) and Defendants' Reply to Plaintiff's Consolidated Response (Dkt. No. 40) ("Defs.' Reply").  In

disposing of the instant matter, the Court has also considered Plaintiff's motion for (partial) summary

judgment on personal jurisdiction and *forum non conveniens* (Dkt. No. 24) ("Pl.'s Mot."), Defendants'

Opposition to Plaintiff's motion for (partial) summary judgment (Dkt. No. 35) ("Defs.' Opp'n"), and

ORDER – 1

1    Plaintiff's Reply (Dkt. No. 41) ("Pl.'s Reply").[1]  The fourth and final motion is Plaintiff's motion to

2    compel certain discovery contingent on the disposition of her motion for summary judgment (Dkt. No.

3    23) ("Pl.'s Disc. Mot."), Defendants' Opposition to Plaintiff's motion to compel (Dkt. No. 33), and

4    Plaintiff's reply (Dkt. No. 43.)  Based on the undisputed facts presented in these motions, the Court

5    having carefully considered all of the papers submitted and having determined that oral argument is not

6    necessary, hereby finds and rules as follows:

7    **I.    BACKGROUND**

8            The present case is a diversity action for wrongful death arising out of an automobile accident in

9    British Columbia ("B.C."), Canada.  (Defs.' PJ Mot. 1.)  On January 9, 2002, Timothy Shopshire

10   ("Shopshire"), a B.C. resident, was driving a tractor-trailer combination across the Washington-British

11   Columbia border to deliver lumber to a storage facility owned by North American Reload, a Washington

12   corporation, at Sumas, WA.  (*Id.*)  At the time, Shopshire was hauling lumber on behalf of Can Ridge

13   Industries, Ltd.[2] ("Can Ridge"), a Canadian corporation in the business of hauling lumber and other

14   freight from B.C., Canada to various cities in Canada and Washington.  (*Id.*)  Approximately eighty miles

15   north of the Washington border, Shopshire's tractor trailer collided with an automobile being driven by

16   the decedent David Peach, a Washington resident.  (Pl.'s Mot. 2–3.)  Peach was killed in the collision.

17   (*Id.*)

18           In April 2003, Cheryl Peach, the decedent's wife, filed suit against Shopshire and Can Ridge in

19

20           [1] Defendants' surreply to Plaintiff's consolidated response to motions to dismiss for lack of
     personal jurisdiction and *forum non conveniens* was untimely.  Accordingly, the Court will not consider
21   this pleading as part of the record herein.  Regardless, consideration of Defendants' surreply would not
     affect the ultimate disposition of this matter.

22
             [2] It is not clear from the record whether Shopshire can be characterized as an independent
23   contractor or an employee.  Although Can Ridge has referred to Shopshire as an independent contractor
     (Defs.' PJ Mot. 5), Can Ridge also stated that it transports goods through its own employee drivers and
24   lease-owner drivers (Dusange Decl. ¶ 5), and that Shopshire was employed by a Canadian corporation
     (Defs.' PJ Mot. 14).  In addition, Can Ridge itself has argued that Shopshire's contacts as an employee
25   must be judged separately from its own contacts.  (*Id.*)

26   ORDER – 2

B.C.  (Defs.' PJ Mot. 3.)  That action has since been stayed.  (Vertlieb Decl. ¶ 4.)  Thereafter, in January 2005, Mrs. Peach brought a wrongful death action in King County Superior Court in Washington. (Defs.' PJ Mot., Scheer Decl. Ex. C.)  Defendants subsequently removed the state action to federal court. (Pl.'s Mot. 3.)  Presently, Defendants have brought motions to dismiss for lack of personal jurisdiction and *forum non conveniens*, and Plaintiff has filed a motion for (partial) summary judgment to establish personal jurisdiction and dismiss Defendants' *forum non conveniens* defense as a matter of law.

## II.   ANALYSIS

### A.   *Personal Jurisdiction*

The exercise of personal jurisdiction over a nonresident defendant must be consistent with the due process requirements of the Fourteenth Amendment to the Constitution of the United States. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 413–414 (1983).  A court may exercise personal jurisdiction over a nonresident defendant consistent with due process only if it has "certain minimum contacts" with the relevant forum "such that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Id.* (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).  In addition, the amount and kind of activities which must be carried on by the foreign defendant in the forum state must be such that it is reasonable and just to subject the defendant to the jurisdiction of the state.  *Perkins v. Benguet Consol. Mining. Co.*, 342 U.S. 437, 445 (1952).  Where a state exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum, the state is exercising "specific jurisdiction" over the defendant; when a state exercises personal jurisdiction over a defendant in a suit not arising out of or related to the defendant's contacts with the forum, the state is exercising "general jurisdiction."  *Helicopteros*, 466 U.S. at 414 nn.8–9.

Washington law governs the exercise of personal jurisdiction in the present case.  Where, as here, there is no applicable federal statute governing personal jurisdiction, the district court applies the law of the state in which the district court sits.  FED. R. CIV. P. 4(k)(1)(A); *Panavision Int'l, L.P. v. Toeppen*,

ORDER – 3

141 F.3d 1316, 1320 (9th Cir. 1998).  Defendants argue that the Court does not have general jurisdiction under RCW 4.28.080(10),[3] Washington's general jurisdiction statute.  Defendant also argues that the Court does not have specific jurisdiction under RCW 4.28.185(1)(a),[4] Washington's long-arm, or specific jurisdiction, statute.  Plaintiff's motion for summary judgment seeks to establish both these prongs as a matter of law.  For the reasons discussed below, the Court finds that (1) it may properly exercise general jurisdiction over Defendant Can Ridge; and (2) the evidence in the record does not support the exercise of personal jurisdiction over Defendant Shopshire.

    1.    *General Jurisdiction Over Can Ridge*

RCW 4.28.080(10) authorizes general jurisdiction over a nonresident defendant when the defendant's actions in the state are so substantial and continuous as to give rise to a legal obligation within the state.  *Raymond v. Robinson*, 15 P.3d 697, 700 (Wash. Ct. App. 2001).  The relevant inquiry in the present case is whether the foreign corporation has carried on "substantial and continuous" business activities within the state.  *See Hein v. Taco Bell*, 803 P.2d 329, 331 (Wash. Ct. App. 1991).

---

[3] RCW 4.28.080 provides:

> Service made in the modes provided in this section shall be taken and held to be personal service.  The summons shall be served by delivering a copy thereof, as follows: . . . (10) If the suit be against a foreign corporation . . . doing business within this state, to any agent, cashier or secretary thereof.

RCW 4.28.080(10).  The Washington Supreme Court has held that this statue confers general jurisdiction.  *Crose v. Volkswagenwerk Aktiengesellschaft*, 558 P.2d 764, 767 (Wash. 1977).

[4] RCW 4.28.185(1)(a) provides:

> (1) Any person, whether or not a citizen . . . of this state, who in person or through an agent does any of the acts in this section enumerated, thereby submits said person . . . to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of said acts: . . . (a) The transaction of any business within this state.

RCW 4.28.185(1)(a).

ORDER – 4

Casual, isolated acts within the state are insufficient to support a finding that a foreign corporation has engaged in continuous or substantial business activity. *MBM Fisheries, Inc. v. Bollinger Mach. Shop & Shipyard*, 804 P.2d 627, 631 (Wash. Ct. App. 1991). Washington courts have held that the "doing business" requirement of RCW 4.28.080(10) subsumes the due process requirement." *Hein*, 803 P.2d at 332; *see also MBM Fisheries*, 804 P.2d at 631 ("'[D]oing business' in Washington necessarily comports with due process."). Thus, the assertion of jurisdiction over a nonresident corporation that is doing business in Washington necessarily comports with due process. *Hein*, 803 P.2d at 332.

Significantly, the analysis to determine whether a foreign corporation is doing business sufficient to confer general jurisdiction under RCW 4.28.080(10) is wholly distinct from the analysis for specific jurisdiction under RCW 4.28.185(1)(a). RCW 4.28.080(10) authorizes general jurisdiction over a foreign corporation *doing* business within the state, which is a basis founded on the common law principles of consent and corporate presence. *Cf. Int'l Shoe Co. v. State*, 154 P.2d 801, 803 (Wash. 1945) ("A foreign corporation is amenable to process to enforce a personal liability, in the absence of consent, only if it is doing business within the state in such manner and to such extent as to warrant the inference that it is *present there*.") (citing *Philadelphia & Reading Co. v. McKibbin*, 243 U.S. 264, 265 (1917)). In contrast, RCW 4.28.185(1)(a) authorizes specific jurisdiction over a foreign corporation *transacting* business within the state. Although both statutes speak of a foreign corporation's "business," for purposes of a personal jurisdiction analysis, Washington law recognizes a difference between doing business and transacting business, and the satisfaction of one does necessarily satisfy the other. Accordingly, the proper inquiry under RCW 4.28.080(1) is not the extent to which Can Ridge has *transacted* business activity; rather, it is the extent to which it has *carried out* its business activity in Washington.

As a preliminary matter, the Court must first address an argument raised by Defendants in their opposition to Plaintiff's motion for summary judgment. Defendants argue that Can Ridge's activities that post-date the accident cannot serve as the basis for general jurisdiction. (Defs.' Opp'n 7.) Defendants

ORDER – 5

1    have cited to *Im Ex Trading Co. v. Raad*, in which the Washington Court of Appeals held that a plaintiff

2    seeking to establish personal jurisdiction must demonstrate that a nonresident defendant was carrying on

3    substantial and continuous business activities in Washington at the time the cause of action accrued.  963

4    P.2d 952, 957 (Wash. Ct. App. 1998).  Thus, Defendants argue, post-accident activities are irrelevant to

5    the general jurisdiction inquiry and cannot be considered.

6           The Court finds that Defendants' interpretation of the holding in *Im Ex Trading* is too restrictive

7    and accordingly declines to follow it.  In *Im Ex Trading*, the plaintiff conceded that the defendant was not

8    engaged in any business activity at the time the cause of action accrued.  *Id.* at 955.  Thus, the only issue

9    was whether a foreign corporation's business activity that arose after the cause of action accrued was

10   sufficient to imbue the court with jurisdiction to adjudicate a dispute that occurred before the defendant

11   had established any contacts with Washington.  The Court does not read *Im Ex Trading* to stand for the

12   general proposition that a court may not take into consideration a foreign corporation's post-accident

13   activities when a foreign corporation's level of business activity at the time the cause of action accrued *is*

14   *in dispute*.  *See id.* at 956 ("[A]ctivities [in 1994–1995] cannot serve as the basis for the . . . assert[ion]

15   of general jurisdiction over a cause of action accruing in 1990, when [defendant] had *no presence in*

16   *Washington*) (emphasis added).  In contrast to *Im Ex Trading*, Can Ridge did have a presence in

17   Washington at the time the cause of action accrued.

18          Were it undisputed that Can Ridge had not engaged in any business activity at the time of the

19   decedent's accident, Defendants' reliance on *Im Ex Trading* would be appropriate.  However, because

20   Defendants' business activity in Washington is very much in dispute in the present case, the Court does

21   not read *Im Ex Trading* as *per se* prohibiting consideration of post-accident activity.  Although the issue

22   has not been specifically addressed in Washington, the Court is persuaded that, where a foreign

23   corporation does have contacts with the forum state at the time the cause of action accrues, a court may

24   consider the foreign corporation's business activity after the cause of action accrued, particularly where

25   that subsequent activity may be useful in gauging the nature and quality of the foreign corporation's

26   ORDER – 6

1    activity prior to the action's accrual.[5]

2            a.      *Can Ridge's Business Activity*

3            Can Ridge attempts to insulate itself from Washington by arguing that prior to January 2, 2002, it

4    only entered into contracts in Canada and received payments from its Canadian customers.  (*Id.*)  First,

5    because the Court rejects Defendants' *Im Ex Trading* argument, the Court will consider the evidence in

6    the record that post-dates the accident.  Second, and more importantly, Can Ridge's argument that it was

7    not *transacting* business within Washington because it contracted with and was subsequently paid by

8    Canadian companies exclusively, while perhaps relevant for purposes of disputing specific jurisdiction,

9    does not carry equal weight for purposes of disputing general jurisdiction.  RCW 4.28.080(10)'s

10   authorization to assert general jurisdiction over a foreign corporation is premised on the extent and nature

11   of the foreign corporation's business activity within Washington, which need not necessarily include

12   contracting with Washington companies.  Sending trucks across the Washington-British Columbia border

13   426 times from May 2001 through December 2002 to deliver freight and/or lumber to cities in

14   Washington constitutes a business activity.  The Court accordingly finds that each time a contracted Can

15   Ridge truck crosses the Washington-British Columbia border, Can Ridge is conducting business activity

16   in the state of Washington for purposes of RCW 4.28.080(10).

17

18            b.      *Can Ridge's Business Activities Within Washington Are Substantial and*

19

20          [5]  The Court is mindful, however, of the spirit of *Im Ex Trading's* holding, and notes that Can
     Ridge's post-accident activity *alone* cannot be used to establish jurisdiction.  Therefore, the Court has not
21   given dispositive weight to these post-accident contacts.  However, because there is sufficient evidence in
     the record to demonstrate that Can Ridge was already evincing a pattern of substantial and continuous
22   business activity in Washington leading up to the date on which the accident occurred, looking to post-
     accident activity is permissible as it establishes a necessary context for a court to evaluate the extent of
23   pre-accident contacts.  (*See, e.g.*, Pl.'s Mot., Goodfriend Decl. Ex. D (bill summaries from January 2002
     - December 2002); Ex. G (traffic citations and vehicle examination reports); Ex. H (motor vehicle permit
24   forms).)  In light of the requirement that the satisfaction of due process depends upon the "quality and
     nature of the [Defendants'] activity," *Int'l Shoe*, 326 U.S. at 319, Defendants' reading of *Im Ex Trading*
25   is too narrow.

26   ORDER – 7

1     *Continuous*

2           In its briefing, Can Ridge points out a seemingly comprehensive list of factors that weigh against

3     this Court exercising general jurisdiction: namely, that Can Ridge does not have any officers, satellite

4     offices, or subsidiaries in Washington (Defs.' PJ Mot. 5), that none of its employees reside in Washington

5     (*id.*), that it has no meetings in Washington and does not make substantial business decisions in

6     Washington, and that it does not advertise or solicit business in Washington.  (Defs.' Opp'n 4.)

7           What Defendant Can Ridge cannot downplay, however, and what ultimately persuades this Court

8     that general jurisdiction can be properly exercised in the present case, is its extensive hauling activities to

9     and from cities throughout Washington.  Defendant Can Ridge's waybill summaries for May 2001

10    through December 2002 depict this story.  The summaries indicate that in addition to shipping freight to

11    North American Reload's storage facility at Sumas, Can Ridge also hauled freight and/or lumber to and

12    from other Washington cities as well, including Lynden, Auburn, Issaquah, Bellingham, Kent, Tacoma,

13    Seattle, and Camano Island.  (Pl.'s Mot., Goodfriend Decl. Ex. D).  The Court's own independent review

14    of the summaries reveals that Can Ridge has made over 160 trips either to or from Washington cities

15    other than Sumas, WA.  In addition, according to the waybill summaries, Can Ridge's revenue on

16    account of its hauling activities in Washington amounted to 40.7% of its total revenue for the period from

17    May 2001 to December 2002 (Pl.'s Mot., Goodfriend Decl. Ex. A), encompassing 426 trips to and from

18    Washington out of a total of 1020.  (*Id.*)  The Court finds that Can Ridge's business activity in

19    Washington is substantial as a matter of law where it is actively and continually shipping to/from nine

20    cities in the state.[6]  The sheer frequency of and revenue derived from Can Ridge's hauling activities in

21

22           [6] Can Ridge's waybill summaries are broken down by two-week intervals.  As one might expect,
      for certain weeks, Can Ridge's travels into Washington would comprise as little as 14% of the total
23    hauling trips the company made for that period.  (Pl.'s Mot. Goodfriend Decl Ex. A, 1 (Week of 6/1 -
      6/15).)  However, for other weeks, Can Ridge's travels into Washington would comprise over 90% of its
24    hauling trips.  (*Id.* at 2 (Week of 3/1 - 3/15).)  There was not a single week, however, during the period
      from May 2001 through December 2002, when Can Ridge did *not* make at least one trip into
25    Washington.

26    ORDER – 8

1   Washington belies its assertions that its customers directed it "to deliver their goods to various locations,

2   a small portion of which are in Washington," (Defs.' PJ Mot., Dusange Decl. ¶ 6), and that "Can Ridge

3   has isolated and limited dealings related to Washington state." (Defs.' PJ Mot. 4.)[7]

4         Can Ridge has other contacts with Washington that buttress the conclusion that it is conducting

5   substantial and continuous business activity in Washington.  Can Ridge has paid licensing fees to the

6   Washington Department of Transportation for the right to use approved Washington highways (Pl.'s

7   Mot., Goodfriend Decl. Ex. H), is a registered foreign carrier with the Washington Utilities and

8   Transportation Commission authorized to transact business in interstate commerce (*id.*, Theriot-Orr

9   Decl. Exs. C, F), and has appointed a registered agent in the State of Washington.  (*Id.*, Theriot-Orr

10  Decl. ¶ 7.)  These contacts, viewed in isolation, would be insufficient to confer general jurisdiction over a

11  foreign corporation.  *Wash. Equip. Mfg. Co. v. Concrete Placing Co.*, 931 P.2d 170, 172–73 (Wash. Ct.

12  App. 1997).  However, in light of the extent of Can Ridge's hauling activities in Washington, these facts,

13  when viewed as a whole, adequately depict a foreign corporation conducting business activity in

14  Washington.

15        Can Ridge attempts to minimize these contacts by relying on its interpretation of *Im Ex Trading*.

16  However, as previously discussed, the Court is persuaded that *Im Ex Trading* does not stand for the

17  proposition for which Defendants have cited it.   Having rejected Defendants' *Im Ex Trading* argument,

18  the Court can properly consider, although not in a dispositive fashion, the fact that Can Ridge has paid

19  fees to the Washington Utility and Transportation Commission after the date of the accident, has been

20  subject to compliance actions by the Washington State Patrol, and that Can Ridge's drivers have been

21  summoned to appear in Washington courts.  (Pl.'s Mot. 5–6.)

22

23

24        [7] Even if the Court did not consider the contacts after January 9, 2002, the Court still finds that
    Can Ridge has sufficient contacts with Washington to assert general jurisdiction.  Can Ridge has admitted
    that from May 2001 – December 2001, 58% of its trips were to or from Washington, and that it derived
25  62% of its revenue from these trips.  (Defs.'Opp'n 8.)

26  ORDER – 9

1    The Court finds that Can Ridge's business activity in Washington is substantial and continuous,

2  and that this Court may properly exercise personal jurisdiction.  Because the exercise of general

3  jurisdiction over a nonresident defendant doing business in Washington necessarily comports with due

4  process, the inquiry into general jurisdiction can properly end here.[8]

5              2.    *Personal Jurisdiction Over Shopshire*

6            In contrast to the findings with respect to Can Ridge, the Court finds that Plaintiff has failed to

7  meet her burden to show the existence of personal jurisdiction with respect to Shopshire, as there is a

8  genuine issue of material fact as to the extent of Shopshire's Washington contacts.  Regardless of

9  whether Shopshire is a Can Ridge employee or an independent contractor, his contacts with Washington

10  state must be judged separately from Can Ridge's contacts, and personal jurisdiction over Can Ridge

11  does not automatically confer personal jurisdiction over Shopshire.  *See Huebner v. Sales Promotion,*

12  *Inc.*, 684 P.2d 752, 756–57 (Wash. Ct. App. 1984).  The only documentary evidence Plaintiff has

13  submitted in support of her jurisdiction argument with respect to Shopshire is his driver's log for

14  December 17, 2001, through January 9, 2002.  (Pl.'s Mot., Goodfriend Decl. Ex. I.)  In total, Shopshire

15

16        [8] Even taking into account due process and reasonableness considerations, however, the Court

17  would uphold general jurisdiction in the present case.  The Washington Supreme Court has observed five
    factors that are relevant in determining whether the exercise of due process over a nonresident defendant

18  violates due process: (1) the interest of the state in providing a forum for its residents; (2) the ease with
    which the party asserting jurisdiction could gain access to another forum; (3) the amount, kind and

19  continuity of activities carried on by the foreign corporation in the state; (4) the significance of economic
    benefits accruing to the foreign corporation as a result of activities purposefully conducted in the state;

20  and (5) the foreseeability of injury resulting from the use of the foreign corporation's product.  *Crose*,
    558 P.2d at 768.  As courts and commentators in Washington have noted, however, the only due process

21  factor that is germane to a general jurisdiction analysis is the third factor, with the remaining *Crose*
    factors being relevant only to a specific jurisdiction inquiry.  *See Hein*, 803 P.2d at 332 (facts supporting

22  finding of substantial and continuous business activity supported assertion of general jurisdiction); *see*
    *also Hartley v. American Contract Bridge League*, 812 P.2d 109, 112 n.4 (Wash. Ct. App. 1991) (noting

23  that the five factors discussed in *Crose* are more germane to the analysis of due process under
    Washington's long-arm statute).  As set forth previously, Can Ridge's waybill summaries indicate that it

24  conducts a substantial portion of its hauling business in Washington on a continual basis.  It is reasonably
    foreseeable that Can Ridge would expect to defend lawsuits in Washington, particularly where its drivers

25  have already been summoned to Washington courts for traffic infractions.

26  ORDER – 10

made eight trips to Washington over this three-week period.  (Pl.'s Mot. 8.)  However, without further

evidence of Shopshire's contacts in Washington prior to the accident,[9] these numbers do not rise to the

level of substantial and continuous business activity sufficient for general jurisdiction.  *Cf. Estate of Rick

v. Stevens*, 145 F. Supp. 2d 1026 (N.D. Iowa 2001) (indicating that the truck driver had made "dozens of

trips into and through" the forum state for purposes of fulfilling contracts with the defendant trucking

company).[10]  Shopshire's general indications in his deposition that he was regularly driving lumber into

Washington in 2000–2002 (Vertlieb Decl. Ex. E, 62), though significant, are insufficient in and of

themselves to establish substantial and continuous business activity prior to the three-week period for

which there is qualitative evidence of Shopshire's Washington contacts.  Accordingly, the Court finds

that based upon the evidence in the record it may not exercise general jurisdiction over Shopshire.

Similarly, the Court declines to find that it may exercise specific jurisdiction over Shopshire.  A

nonresident defendant is subject to in personam jurisdiction where the defendant has transacted any

business within the state.   RCW 4.28.185(1)(a).[11]   Shopshire's responsibilities with Can Ridge were

limited to delivering trailers in Canada and Washington, and he was hired only by Canadian corporations

to drive trucks inside Canada and from Canada across the border to the United States.  The record does

---

[9]  Any information Plaintiff would acquire through her motion to compel discovery would not affect the Court's finding with respect to Shopshire.  Even if documentary evidence reveals that Shopshire was engaged in substantial and continuous business activity on behalf of Can Ridge in the years for which Plaintiff is seeking to compel discovery, the record's depiction of Shopshire's contacts with Washington leading up to the date of the accident is too deficient in order for the Court to find general jurisdiction based on any of his business activity in 2003 and 2004.

[10]  The *Stevens* court specifically limited its general jurisdiction inquiry to the contracts the driver had completed with the defendant trucking company.  There is no documentary evidence that reflects Shopshire's hauling activities in Washington for other companies.

[11]  In addition, the Washington Supreme Court has held that the following three factors must coincide: (1) The nonresident defendant or foreign corporation must purposefully do some act or consummate some transaction in the forum state; (2) the cause of action must arise from, or be connected with, such act or transaction; and (3) the assumption of jurisdiction by the forum state must not offend traditional notions of fair play and substantial justice.  *Shute v. Carnival Cruise Lines*, 783 P.2d 78, 80 (Wash. 1989).

ORDER – 11

not indicate that he has ever contracted with or solicited business from any Washington businesses or residents.  As such, the Court finds that he has not *transacted* business in Washington for purposes of exercising specific jurisdiction.

   **B.     Forum Non Conveniens**

   Defendants also argue that Plaintiff's action should be dismissed on grounds of *forum non conveniens*.  "A district court has discretion to decline to exercise jurisdiction in a case where litigation in a foreign forum would be more convenient for the parties."  *Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1142 (9th Cir. 2001). In exercising this discretion, a court must consider (1) if an adequate alternative forum exists, and (2) whether the balance of public and private interest favors a different forum.  *Id.* at 1142.   If the alternative forum is adequate, the court must then evaluate whether the public and private interest factors favor dismissal.  The defendant bears the burden of proving the existence of an adequate alternative forum.  *Id.* at 1143.  Federal law applies to the evaluation of a motion to dismiss on *forum non conveniens* filed in a federal court.  *Ravelo Monegro v. Rosa*, 211 F.3d 509, 511–512 (9th Cir. 2000).


   **1.     Existence of an Alternative Forum**

   The Court finds that B.C. is an adequate alternative forum.  The only argument Plaintiff advances against a finding that B.C. is an adequate alternative forum is her potential for a limited recovery under a mandatory administrative process, imposed by B.C.'s workers compensation law, which Plaintiff argues would limit her recovery to "a fraction of the decedent's earnings."  (Pl.'s Mot. 19.)  This argument blurs the distinction between recovery and remedy.  Under a *forum non conveniens* analysis, the proper inquiry is whether the alternative forum "provides the plaintiff with some remedy for his wrong in order for the alternative forum to be adequate."  *Lueck*, 236 F.3d at 1143.  Although Plaintiff's recovery may be limited by the B.C. Worker's Compensation Act, this is nevertheless a remedy for purposes of determining whether an alternative forum exists, and Plaintiff has not shown that this administrative remedy would be so inadequate as to amount to no remedy at all.  *See id.* at 1143–44; *see also Piper*

ORDER – 12

*Aircraft Co. v. Reyno*, 454 U.S. 235 (1981) (holding that litigation in Scotland was appropriate despite the fact that the remedies available to Plaintiffs were less favorable).

### 2.   *The Balance of Private and Public Interest Factors*

A plaintiff's choice of forum ordinarily should not be disturbed, unless the "private interest" and "public interest" factors strongly favor a trial in a foreign country. *Lueck*, 236 F.3d at 1145 (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 509 (1947)). A plaintiff need not select the optimal forum for his/her claim, but only a forum that is not so oppressive and vexatious to the defendant "as to be out of proportion to plaintiff's convenience." *Ravelo Monegro*, 211 F.3d at 514. "If the balance of the conveniences suggests that trial in the chosen forum would be unnecessarily burdensome for the defendant or the court, dismissal is proper." *Lueck*, 236 F.3d at 1145. In addition, the U.S. Supreme Court has held that "a plaintiff's choice of forum is entitled to greater deference when the plaintiff has chosen the home forum . . . . When the home forum has been chosen, it is reasonable to assume that this choice is convenient." *Lueck*, 236 F.3d at 1143 (citing *Piper Aircraft*, 454 U.S. at 256).

### a.   *Private Interest Factors*

Courts have identified the following as private interest considerations: (1) the relative ease of access to sources of proof; (2) availability of compulsory process for attendance of unwilling witnesses; (3) the cost of obtaining attendance of willing witnesses; (4) the possibility of viewing the premises; and (5) all other practical problems that make trial of a case easy, expeditious and inexpensive. *Gulf Oil*, 330 U.S. at 508. Other relevant factors include (1) the residence of the parties and the witnesses; (2) the forum's convenience to the litigants; and (3) the enforceability of the judgment. *Lueck*, 236 F.3d at 1145 (citing *Gulf Oil*, 330 U.S. at 508). The balance of these factors favors a Washington forum.

The first factor the Court must consider is the relative ease of access to sources of proof. In light of the inevitable dispute as to liability in the present case, the Court agrees with Defendants that this factor favors the Canadian forum. Inasmuch as a Canadian forum would burden Plaintiff's access to proof of damages to some extent, Defendants have generally pointed to non-party witnesses located in

ORDER – 13

1   Canada essential to the issue of liability, including witnesses from B.C.'s Ministry of Transportation and a

2   B.C. highway maintenance contractor.  (Defs.' Reply 9–10.)  Can Ridge and its liability witnesses are

3   residents of Canada, and any additional documentary evidence not produced resides at Can Ridge's

4   principal place of business in B.C.  The Court finds that the relative ease of access to sources of proof

5   favors the Canadian forum.

6          For several reasons, however, the Court is not persuaded that the second factor weighs in favor of

7   dismissal of the current action.  First, while Defendants are correct in stating that courts within the United

8   States do not have the legal power to compel the testimony of potential Canadian witnesses not under the

9   control of any party (Defs.' FNC Mot. 12), Defendant ignores another procedural device that would

10  afford access to the testimony of Canadian witnesses whose testimony would be relevant to Can Ridge's

11  liability.  Many courts have recognized the availability of letters of request as relevant in determining

12  whether the plaintiff's chosen forum is inconvenient.  *See, e.g., DiRienzo v. Philip Servs. Corp.*, 294 F.3d

13  21 (2d. Cir. 2002); *see also* FED. R. CIV. P. 28(b) ("Depositions may be taken in a foreign country . . . (2)

14  pursuant to a letter of request.").  Accordingly, Can Ridge may request the Court to issue letters of

15  request addressed to a British Columbia court seeking its assistance in gathering evidence from witnesses

16  residing there.  *See, e.g.*, *Derensis v. Coopers & Lybrand Chartered Accountants*, 930 F. Supp. 1003,

17  1010 (D.N.J. 1996) (defendant failed to show that British Columbia courts would not enforce letters of

18  request issued by U.S. courts, bringing the balance of the second private factor in favor of plaintiff).

19  Thus, while Defendants would lack access to compulsory process of non-party Canadian witnesses, it

20  does not necessarily follow that a U.S. trial would place a major hardship on Defendants or "all but

21  preclude Defendants from presenting a road design defense."  (Defs.' Reply 10.)  Although the Court

22  recognizes that letters of requests are a more costly measure than open access to discovery in B.C.,

23  letters of request have been recognized as a viable means for a foreign corporation to obtain pretrial

24  testimonial and evidentiary discovery of Canadian non-party witnesses.  *See id.* at 1009–1010 (discussing

25  the use of letters of request to seek the aid of Canadian courts in a proceeding in the United States for

26  ORDER – 14

1  purposes of discovery).  For these reasons, the Court is convinced that the additional burden of issuing

2  letters of request, should they be necessary, is not sufficient to upset Plaintiff's choice of forum.

3       Additionally, Defendants appear only to have speculated that certain witnesses from the B.C.

4  Ministry of Transportation and highway maintenance contractor would be unwilling to attend a trial in

5  Washington.  The record does not give any indication that Defendants have made efforts to contact these

6  potential witnesses to procure their possible attendance.  Neither does the record realistically suggest any

7  other liability witnesses Defendants may need to call at trial.  At best, the record suggests that Defendants

8  have done no more than *assume* witnesses from B.C. would be unwilling to attend a trial in Washington

9  for purposes of making this argument.  Therefore, the Court finds that this factor weighs against

10 dismissal.

11      The third factor is the cost of obtaining willing witnesses to attend trial.  There can be no dispute

12 that regardless of where this action is ultimately brought, one side will necessarily bear the burden of

13 bringing witnesses to testify in a foreign jurisdiction.  Although Defendant may have a compelling

14 argument that the majority of liability witnesses reside in B.C., the record does not realistically reflect any

15 basis upon which the Court can properly make this determination.  Transfer from Washington to B.C. will

16 primarily serve only to shift these costs from Defendant to Plaintiff, which is not a permissible basis for a

17 *forum non conveniens* dismissal.  *U.S. Sprint Commc'ns v. Boran*, 716 F. Supp. 505, 508 (D. Kan.

18 1988).  Given that Plaintiff's choice of forum is entitled to deference, and the apparent recognition by

19 some federal courts that imposing traveling time on willing defendants does not *per se* render a forum

20 inconvenient, the Court finds that, at best, this factor is in equipoise.  *See, e.g., DiRienzo*, 294 F. 3d at 30

21 (noting that a ninety-minute flight between Toronto and New York would not be so burdensome as to

22 warrant a finding that New York was an inconvenient forum).

23      The Court finds that the fourth prong of the private interest factors, viewing the premises,

24 militates against dismissal.  *Gulf Oil* noted that this factor would only carry weight "if view would be

25 appropriate to the action."  *Gulf Oil*, 330 U.S. at 508.  Defendants have admitted that "viewing the

26 ORDER – 15

premises of the accident is a rare occurrence" and have only marginally indicated that they may wish to do so. (Defs.' Reply 10.)  Furthermore, while the parties have indicated that there is a dispute as to Can Ridge's liability in this matter, the Court notes that the record includes detailed accident reconstruction reports (Defs.' Reply, Furman Decl., Ex. E), as well as police reports from witnesses (Defs.' PJ Mot., Scheer Decl. Ex. H), that may very well supplant the need to visit the accident site.

The final factor the Court must consider is all the other practical considerations that make trial of a case easy, expeditious and inexpensive.  In arguing this factor, Defendants largely restate their arguments regarding lack of compulsory process to compel non-party witness testimony and the limitations this may have on pre-trial settlement.  This argument, however, can be no more compelling now than under its previous consideration.  Having failed to identify any specific considerations under this prong, the Court finds that this factor weighs against dismissal.

> b.   *Public Interest Factors*

In addition to evaluating the private interest factors, a court must also examine the public interest factors.  The relevant public interest factors include (1) administrative difficulties flowing from court congestion; (2) the local interest in having localized controversies resolved in their home forum; (3) the imposition of jury duty on the citizens of a forum that is unrelated to the subject of the litigation; and (4) the Court's familiarity with the governing law.  *Gulf Oil*, 330 U.S. at 508–09; *see also Lueck,* 236 F.3d at 1147 (citing *Piper Aircraft*, 454 U.S. at 259–61).[12]  In evaluating the public interest factors, a court must "consider the focus of the alleged conduct . . . and the connection of that conduct to plaintiff's chosen forum."  *Van Cauwenberghe v. Biard*, 486 U.S. 517, 528 (1988).  The balance of these factors also favors a Washington forum.

The first public interest factor weighs against dismissal.  Here, Defendants essentially raise a

---

[12]  Although courts have recited the public interest factors in a variety of ways subsequent to *Gulf Oil*, they all appropriately capture the public interest concerns as originally laid out the U.S. Supreme Court in *Gulf Oil*.  In most cases, elements have simply been combined and reworded.

ORDER – 16

forum-shopping argument by noting that Plaintiff originally filed suit in B.C. and that the B.C. lawsuit could have been resolved now but for the filing in Washington.  (Defs.' FNC Mot. 14–15.)  This argument fails to demonstrate why litigating the present case in Washington raises administrative difficulties.  In addition, the U.S. Supreme Court has never noted the fact of pending litigation in an alternative forum as a relevant factor in a *forum non conveniens* analysis.  *See Guidi v. Inter-Cont'l Hotels Corp.*, 224 F.3d 142, 148 (2d Cir. 2000) ("The existence of related litigation . . . is not listed as a relevant factor in the *forum non conveniens* analysis.").  Consequently, the court congestion factor does not favor dismissal of Plaintiff's lawsuit.

The second public interest factor also weighs against dismissal.  Defendants argue that Washington has little interest in retaining jurisdiction over this matter because the State's only connection was the state residency of the decedent.  (Defs.' FNC Mot. 16.)  Defendants' arguments are not persuasive, however, in light of the Court's finding that Can Ridge has conducted business activity in Washington sufficient to warrant general jurisdiction.  The Department's intervention further speaks to Washington's local interest.[13]  While the Department's ability to recover benefits paid to Plaintiff is not dependent on a Washington forum, the fact that benefits *have* been paid to a Washington resident for the wrongful death of a Washington resident necessarily injects a greater local interest than Defendants are willing to recognize.  Although the accident at issue occurred outside of Washington, it nevertheless involved a Washington resident, Washington is Plaintiff's home jurisdiction, the state has already paid out certain sums with respect to this action, and Washington has an inherent interest in affording its citizens a convenient forum.  *Harlow v. Children's Hosp.*, 432 F.3d 50, 67 (1st Cir. 2005).  The Court finds that

---

[13]  The Court notes that the legislative history of Washington's Industrial Insurance Act ("IIA") speaks to the propriety of whether a court should dismiss on grounds of *forum non conveniens* only to the extent that the IIA evinces a public policy in favor of efficient compensation of workers injured in the course of work-related activities.

ORDER – 17

Washington has a sufficient local interest in this dispute.[14]

The third factor also weighs against dismissal, for reasons similar to those discussed regarding the first factor. Defendants essentially state the generality that jurors will be forced to take time away from friends, family, and work to decide the present case. However, as the Court has noted with respect to the first and second public interest factors, Washington has more than a minimal interest in adjudicating an action involving a business engaged in continuous and substantial business activity within its borders.

The fourth factor that the Court must examine is the Court's familiarity with the governing law, and the likelihood that the Court will need to apply foreign law. The Court recognizes that there is a strong likelihood that B.C. law will apply to this action. However, while the application of foreign law is a factor favoring dismissal, "this factor alone is not sufficient to warrant dismissal when a balancing of all relevant factors shows that the plaintiff's chosen forum is appropriate." *Piper Aircraft*, 454 U.S. at 260 n.29. Federal courts apply foreign law routinely, and adequate procedures have been developed for that purpose. *See* FED. R. CIV. P. 44.1. In addition, based on the evidence within the record, it appears that

---

[14] The Court has given consideration to the fact that Can Ridge is a B.C. corporation, that Can Ridge conducts substantial business activity in Washington, and that B.C. has a government-run auto and health insurance scheme that applies in the present case and finds that Washington does have sufficient local interest for the action to proceed in this forum. Nothing in *Hill v. Jawanda Transp. Ltd.*, 983 P.2d 666 (Wash. Ct. App. 1999) speaks to the contrary. *Hill* involved a dispute between two B.C. residents, in contrast to the present case. In addition, both liability and damages witnesses were located in B.C, in contrast to the present action where witnesses will be divided between Washington and B.C. Although Defendant Can Ridge is a B.C. corporation, its reliance on *Hill* ignores the fact that Plaintiff is a Washington resident. The Court also finds Defendants' international comity arguments insufficient to strip Washington of its local interest in this action. Despite B.C.'s government-run auto/health insurance scheme, Washington courts have adjudicated disputes involving automobile accidents between Washington residents and B.C. residents, even where B.C. law is applied. *See Mulcahy v. Farmers Ins. Co. of Wash.*, 95 P.3d 313 (Wash. 2004). In addition, Can Ridge's insurance policy with the Insurance Corporation of British Columbia provides coverage for negligence that "occurs on any route or in any territory authorized to be served by the insured." (Theriot-Orr Resp. Decl. Ex. C (CAN 00643).) Can Ridge also appears to have third-party coverage from an American Insurance Carrier. (Theriot-Orr Decl. Ex. F at 2.) Accordingly, as there are interests on both sides of the border, the Court cannot entirely discount Washington's local interest on notions of international comity.

ORDER – 18

the only point of substantial difference between Washington's negligence and wrongful death law appears to be the valuation of damages.  Regarding substantive differences between Washington and British Columbia law, Defendants' expert only notes that British Columbia's damages scheme is different from that in Washington in that British Columbia law limits the amounts recoverable for non-pecuniary losses in a tort lawsuit.  (Defs.' FNC Mot., Fister Decl. ¶ 8.)  Accordingly, the Court need not give this factor dispositive weight in balancing the public interest factors.

In sum, Defendants have failed to show that the balance of private and public interest factors weighs in favor of dismissal.  Coupled with the strong presumption in favor of the plaintiff's choice of forum, a presumption that "is fortified when an American plaintiff brings suit against a foreign entity and the alternative forum is foreign," *Olympic Corp. v. Societe Generale*, 462 F.2d 376, 378 (2d Cir. 1972), the Court finds that Defendants have not made the requisite showing of "such oppression and vexation of [the] [D]efendant . . . as to be out of proportion to [P]laintiff's convenience."  *Ravelo*, 211 F.3d at 514.

## III.   CONCLUSION

For the reasons set forth in this Order, it is hereby ORDERED:

(1) Defendants' motion to dismiss for lack of personal jurisdiction is DENIED with prejudice as to Defendant Can Ridge and DENIED without prejudice as to Defendant Shopshire;

(2) Defendants' motion to dismiss for *forum non conveniens* is DENIED;

(3) Plaintiff's motion for (partial) summary judgment is hereby GRANTED as to Defendant Can Ridge and DENIED without prejudice as to Defendant Shopshire;

(4) Plaintiff's motion to compel discovery is STRICKEN as MOOT.

SO ORDERED this 23d day of February, 2006.

UNITED STATES DISTRICT JUDGE

ORDER – 19